**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
CHRISTINE THOMAS, on behalf of herself and
all others similarly situated,

                Plaintiff,              Case No. _____

      -against-                    CLASS ACTION COMPLAINT
                                          & DEMAND FOR JURY TRIAL
FABULA HOLDINGS, INC. d/b/a FABULA COFFEE,

                Defendant,

_____

Plaintiff, CHRISTINE THOMAS ("Plaintiff" or "Ms. Thomas"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs" or the "Class"), by and through undersigned counsel, brings this action against FABULA HOLDINGS, INC. d/b/a FABULA COFFEE ("Fabula" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, the New York Civil Rights Law ("NYCRL"), N.Y. Civ. Rights Law § 40 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, arising from Defendant's failure to ensure that its e-commerce website, www.fabulacoffee.com (the "Website"), is accessible to blind and visually impaired individuals.

## INTRODUCTION

1.      Plaintiff Christine Thomas is a legally blind resident of Bronx County, New York, residing at 210 East 203rd Street, Bronx, New York 10458. According to a July 15, 2026 medical letter issued by Christopher R. Scheno, O.D., Ms. Thomas sustained severe bilateral ocular trauma at approximately age 12 as the direct result of a vehicular accident, resulting in complete and permanent loss of vision in her right eye, severely compromised and significantly impaired vision in her left eye, and visual limitations that satisfy applicable federal and New York standards for

legal blindness. Because of the severity and permanence of her condition, Ms. Thomas cannot visually evaluate product photography, graphical elements, low-contrast text, or other image-driven commercial content on a digital screen in the manner sighted users can. Exhibit A

2.      Because of her permanent and irreversible vision loss, Ms. Thomas relies on screen-reader software and keyboard navigation to access digital interfaces, read product information, and complete online transactions. When a website is properly coded, screen-reading software can identify product images, read labels, announce interactive controls, and allow blind consumers to shop independently. When a website is not properly coded, screen-reading software cannot interpret essential content, rendering the site unusable for blind users.

3.      Defendant FABULA HOLDINGS, INC. owns, operates, and controls the commercial retail Website, www.fabulacoffee.com, through which it markets and sells coffee products and related wellness-oriented merchandise directly to consumers nationwide, including consumers in New York. The Website promotes coffee offerings, collagen peptides, product reviews, FAQs, shipping and returns information, support resources, and purchasing features as part of a highly interactive online retail platform.

4.      On three separate occasions—June 26, 2026, July 2, 2026, and July 11, 2026—Ms. Thomas attempted to browse, evaluate, and purchase specific products from Defendant's Website using screen-reader technology but was denied full and equal access because of the Website's pervasive accessibility barriers.

5.      Plaintiff sought to research and purchase two specific products from Defendant's Website: Fabula's **Collagen Peptides** product and the **Hazelnut Coffee - 12oz** product featured on the audited product page. Plaintiff was particularly interested in the Collagen Peptides product because Fabula markets itself as a health-oriented brand and Plaintiff wanted to evaluate a wellness-focused ingestible product that she believed could support her general health and physical well-

being. Plaintiff was also interested in the Hazelnut Coffee - 12oz product because she wanted to pair a flavored coffee offering with Fabula's wellness-branded product line and compare whether Fabula's claimed product benefits, reviews, and purchasing options made it an appropriate source for both products.

6. Plaintiff chose Fabula over other websites because Fabula presented itself as a specialized, health-oriented retailer whose product line was marketed as organic, low-acid, mold-free, non-GMO, lab-tested, and directed to consumers seeking smoother coffee and complementary wellness products. The Website's integrated presentation of product-specific reviews, FAQ content, category-based merchandising, support resources, and purchase options made it especially attractive to Plaintiff, who needs a single accessible source where she can independently compare health-related product attributes, consumer feedback, and ordering options before deciding whether to buy.

7. During each visit, Plaintiff encountered multiple accessibility barriers that prevented her from completing her intended purchases, including missing or non-descriptive alternative text on images, missing form labels, multiple form labels, empty headings, empty buttons, broken skip links, an empty table header, unlabeled select elements, redundant alternative text, and extensive low-contrast content. These barriers prevented Plaintiff's screen reader from reliably conveying what the products looked like, how related options were presented, how to use interactive controls, and how to obtain important product and transactional information.

8. Automated accessibility testing confirms that the barriers Plaintiff encountered are neither isolated nor incidental. A WAVE evaluation of the Hazelnut Coffee page identified 17 errors, 55 contrast errors, and 83 alerts, including 8 missing alternative text errors, 1 missing form label, 2 multiple form labels, 1 empty heading, 2 empty buttons, 2 broken skip links, and 1 empty table header. A broader SortSite accessibility validation report of the Website likewise identified accessibility issues across the site, but the SortSite crawl could be completed only to approximately

19% because Defendant's Website employed anti-bot protections that prevented further automated review. Even so, the partial SortSite scan still documented accessibility barriers on the Website, confirming that the defects Plaintiff encountered were systemic and recurring rather than confined to one product page. Exhibit B.

9.      Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies and governance, and ensure that the Website is—and remains—fully accessible to blind and visually impaired consumers in substantial conformance with the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff alleges violations of Title III of the Americans with Disabilities Act, a federal civil rights statute.

11.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, the New York City Human Rights Law, and the New York State Civil Rights Law.

12.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in Bronx County, accessed and attempted to use the Website from her home within this District, and suffered injury here. A substantial part of the discriminatory conduct giving rise to this action—including the denial of equal access to Defendant's online goods, services, and digital content—occurred within this District.

13.     Defendant conducts substantial, continuous, and systematic business within this District by marketing, advertising, and selling coffee products and related wellness-oriented merchandise to New York consumers through its highly interactive retail Website, www.fabulacoffee.com. Defendant purposefully avails itself of the privilege of conducting business

in New York by transmitting digital content, files, and data to consumers located in this District and engaging in nationwide e-commerce directed at New York residents. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. *See Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351 (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. 162 (2018); *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.*, 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

14.     Defendant FABULA HOLDINGS, INC. is a Delaware corporation formed on October 13, 2020.

15.     Defendant owns, operates, controls, and maintains the Website www.fabulacoffee.com, which markets and sells consumer coffee products and related support resources to users in New York and throughout the United States.

## THE PARTIES

16.     Plaintiff Christine Thomas is a legally blind resident of Bronx County, New York. As documented in the July 15, 2026 letter of Christopher R. Scheno, O.D., she has complete loss of vision in her right eye, severe and significantly impaired vision in her left eye, and a permanent bilateral visual impairment that satisfies applicable federal and New York standards for legal blindness. Because of her irreversible vision loss, she relies on screen-reader software and keyboard navigation to access digital content and complete online transactions independently.

17.     Defendant FABULA HOLDINGS, INC. d/b/a FABULA COFFEE is a business entity that owns, operates, controls, and maintains the commercial retail Website www.fabulacoffee.com, which markets and sells coffee and related products to consumers

nationwide, including residents of New York. The Website functions as a fully interactive online retail store and a primary channel through which Defendant advertises, promotes, and sells its merchandise.

18.    At all relevant times, Defendant has continuously conducted business within the Southern District of New York by offering its goods and services to residents of this District through its Website and by repeatedly transmitting digital content, files, and data to consumers located here. Defendant's ongoing operation of a nationwide e-commerce platform directed at New York consumers constitutes continuous and systematic business activity within this District.

## NATURE OF ACTION

19.    This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, challenging Defendant's operation of a public-facing Website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's Website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its products and related services. Defendant's failure to design and maintain its Website in accordance with recognized accessibility principles constitutes unlawful discrimination.

20.    The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

21.    In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen-access software that vocalizes visual content or displays it on a refreshable Braille device. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

22.    Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. Apple device users rely on VoiceOver. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

23.    For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users cannot access the same content available to sighted users. Screen-reading software translates the visual Internet into an auditory equivalent by reading webpage content aloud at a rapid pace. *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017).

24.    The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG 2.0" and "WCAG 2.1"), which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies and have been recognized by courts as the appropriate benchmark for ADA compliance.

25.    Non-compliant websites pose recurring barriers to blind and visually impaired users. Common violations include, but are not limited to, missing text equivalents for non-text elements, inaccessible forms and input fields, content conveyed solely through visual presentation, links and buttons lacking descriptive context, broken navigational structures, low-contrast elements, empty or unlabeled controls, and user-interface elements whose roles and states cannot be programmatically determined.

## STATEMENT OF FACTS

26.    Plaintiff Christine Thomas is a legally blind consumer residing in Bronx County, New York. At approximately age 12, she sustained severe bilateral ocular trauma in a vehicular

accident, resulting in complete and permanent loss of vision in her right eye and severe, significantly impaired vision in her left eye. Her condition is permanent, irreversible, and constitutes legal blindness under applicable federal and New York standards. Her remaining vision is insufficient to permit her to independently evaluate product photography, graphical content, or low-contrast digital interfaces in the manner a sighted consumer can.

27.    Because Plaintiff cannot reliably read standard visual content or interpret product imagery, she depends entirely on properly coded, screen-reader-compatible websites to shop independently, evaluate products, and access online information on equal terms with sighted consumers. Accessible coding, meaningful alternative text, properly labeled form controls, and reliable keyboard navigation are indispensable to her ability to use a retail website.

28.    Fabula is a specialized coffee and wellness-oriented retailer whose Website emphasizes qualities that would be material to a health-conscious consumer deciding whether to purchase from that brand rather than a generic marketplace seller. The Website presents its products as organic, low-acid, mold-free, non-GMO, lab-tested, and directed to consumers seeking smoother coffee and related wellness benefits. The Website also presents ratings, reviews, FAQs, category navigation, support resources, and multiple product-selection options as part of its sales platform.

29.    Plaintiff chose Fabula, and its Website, www.fabulacoffee.com, over other websites because the Website appeared to offer a focused, specialty shopping experience integrating both coffee products and wellness-oriented merchandise, including collagen peptides, with brand-specific informational content not ordinarily aggregated in one place on generalized marketplaces. Plaintiff sought a retailer whose product pages would allow her to independently compare health-related product attributes, flavor or product options, ratings, review content, FAQ information, and purchase choices before committing to a purchase.

30.    Plaintiff was particularly interested in Fabula's **Collagen Peptides** product because

she wished to evaluate a wellness-oriented ingestible product sold by a retailer that emphasized health-centered claims and product quality. Plaintiff was also interested in the **Hazelnut Coffee - 12oz** product because she wanted to compare whether Fabula's health-oriented marketing, customer reviews, and product presentation made the company a suitable source for both daily-use coffee and wellness-supporting products. The integrated nature of Defendant's product line made Plaintiff's ability to browse the Website independently especially important: if the Website were accessible, Plaintiff intended not only to evaluate the coffee product she first encountered, but also to return to review and potentially purchase Fabula's collagen product and related offerings.

31.     On **June 26, 2026**, using screen-reader technology on her computer, Plaintiff navigated to the product page for **Hazelnut Coffee - 12oz**, intending to evaluate the product as a possible purchase and to assess whether Fabula's product line justified further exploration of the Website's wellness-oriented offerings, including Collagen Peptides. The WAVE evaluation of that page later confirmed 17 accessibility errors, including 8 missing alternative text errors, 1 missing form label, 2 multiple form labels, 1 empty heading, 2 empty buttons, 2 broken skip links, and 1 empty table header, together with 55 contrast errors and 83 alerts.

32.     As Plaintiff attempted to review the Hazelnut Coffee page, the page's missing alternative text prevented her screen reader from reliably conveying an accessible equivalent of the product imagery and related visual merchandising. The audit reflects a page that relied on image-driven content, product ratings, review presentation, and visual product merchandising, yet multiple elements lacked meaningful alternative text. As a result, Plaintiff could not independently determine what important images were intended to show about the product, how the images differed from one another, or what visual information sighted consumers were able to glean at a glance from the product page.

33.     Plaintiff also encountered barriers affecting fields, buttons, and page structure. The

same WAVE evaluation identified a missing form label, multiple form labels, empty buttons, broken skip links, and an empty heading, all of which interfered with Plaintiff's ability to understand and use interactive controls, navigate efficiently through the page, and proceed toward purchase independently. When a control is empty, mislabeled, multiply labeled, or bypass links are broken, a blind user is deprived of the structured navigation and dependable announcements necessary to complete a transaction on equal terms with sighted shoppers.

34.     The WAVE evaluation also identified 55 very low contrast errors on the Hazelnut Coffee page. For a consumer like Plaintiff, who retains only severely limited vision in one eye, low-contrast text and controls materially diminish the limited visual cues available to her and compound the barriers already imposed by inaccessible screen-reader coding.

35.     On July 2, 2026, Plaintiff returned to www.fabulacoffee.com to compare products and determine whether Defendant's Website would permit her to independently evaluate both its coffee offerings and its wellness-oriented merchandise, including Collagen Peptides. She again attempted to use the Hazelnut Coffee product page because it functioned as her initial entry point into Defendant's merchandising system and displayed the type of integrated product-selection, review, and purchase environment she would need to navigate before trusting the site enough to buy additional products. The WAVE evaluation reflected additional accessibility problems relevant to this attempted comparison, including select elements missing labels and numerous redundant alternative text alerts. Those barriers interfered with Plaintiff's ability to determine which controls corresponded to which product options, whether the content she was hearing through her assistive technology was accurate, and whether the Website would permit her to continue to other desired products such as Collagen Peptides with confidence. [file:3]

36.     The page also displayed ratings and review content, including a rating announced as "Rated 4.9 out of 5 stars 76 reviews," together with review entries and product-related

merchandising content. Yet because the page's coding defects affected navigation, labeling, image accessibility, and bypass functionality, Plaintiff could not independently access the same integrated product-evaluation experience available to sighted users, who could review the visual presentation of the item together with the ratings, reviews, and selectable options.

37.     On **July 11, 2026**, Plaintiff again returned to the Website to attempt to review supporting information that could help her complete a purchase and decide whether to return to acquire Fabula's Collagen Peptides product once she was satisfied with the Website's overall reliability. The audited page included support contact information, FAQ content, category navigation, and purchase-related interface elements, but the same barriers—missing labels, broken skip links, empty buttons, inaccessible image content, and low-contrast presentation—continued to obstruct Plaintiff's efforts to use those features independently and to determine whether she could trust the site enough to evaluate or buy additional products from the same retailer.

38.     The barriers Plaintiff personally encountered on the Hazelnut Coffee page are not isolated defects specific to that single URL. The broader SortSite accessibility validation report identified accessibility issues across Defendant's Website. Significantly, that SortSite crawl had to be stopped at approximately **19% completion** because Defendant's Website deployed anti-bot protections that prevented a full automated review, yet even that partial scan still documented multiple accessibility issues. The fact that accessibility barriers were found despite the crawl being cut short by Defendant's anti-bot protections strongly supports the inference that the Website's defects are systemic and widespread across additional pages that could not be fully audited.

39.     Defendant's Website is not a passive marketing tool. It is a fully interactive retail platform central to Defendant's business model, offering product listings, detailed product claims, customer reviews, FAQs, category navigation, shipping information, support resources, and purchasing functionality. Defendant relies on www.fabulacoffee.com to market and distribute its

products nationwide, including to consumers in New York, and to sell the very products Plaintiff attempted to research and purchase, as well as additional wellness-oriented products Plaintiff seeks to evaluate, including Collagen Peptides.

40.    Plaintiff's intent to return to www.fabulacoffee.com is concrete, credible, and ongoing. Her interest is not abstract or generalized; it is tied to specific products, including Fabula's **Collagen Peptides** and **Hazelnut Coffee - 12oz**, specific attempted visits on June 26, 2026, July 2, 2026, and July 11, 2026, and specific functional needs arising from her blindness, including the need for properly described product imagery, accessible labels for controls and selectable options, reliable buttons and navigation, and sufficient contrast for any residual visual use.

41.    Plaintiff remains interested in purchasing Fabula's **Collagen Peptides** product because Defendant markets itself as a health-oriented retailer and because Plaintiff wants to evaluate that wellness-focused product through the same integrated Website on which Defendant presents its coffee and related offerings. Plaintiff's desire to purchase Collagen Peptides is concrete and ongoing, but she cannot independently evaluate the product, its associated product information, its reviews, its purchase controls, or the surrounding Website navigation unless Defendant removes the accessibility barriers documented in the WAVE and SortSite reports.

42.    Plaintiff also remains interested in purchasing the **Hazelnut Coffee - 12oz** product because she specifically attempted to evaluate it during her June 26, 2026 and July 2, 2026 visits and because it served as the initial product through which she attempted to assess the Website's reliability for additional Fabula purchases. Once Defendant remedies the missing alternative text, form-label, button, skip-link, and contrast defects documented on that page, Plaintiff intends to return and complete her evaluation and purchase.

43.    Plaintiff intends to return to Defendant's Website not for some abstract reason, but because she genuinely desires to purchase from Defendant's health-oriented product line and

because Fabula's integrated presentation of coffee and wellness products makes the Website itself the gateway to those purchases. If the Website were made accessible, Plaintiff would return to review Collagen Peptides, compare it against Defendant's other offerings, reassess Hazelnut Coffee - 12oz, and complete one or more purchases. Her return intent is therefore concrete, plausible, particularized, and directly tied to the specific products, pages, and barriers described herein.

44.     Plaintiff's need for accessible online shopping is permanent and ongoing. Her bilateral visual impairment prevents her from independently using inaccessible digital retail platforms in the same manner sighted consumers do. Her prior attempts to shop on the Website were genuine and purposeful, motivated by her desire to purchase the specific Fabula products identified above and by her good-faith effort to use the Website's product, review, FAQ, and support features. On each occasion, she attempted to read product information, compare options, review supporting content, and proceed toward purchase, but was prevented from doing so by concrete, page-level accessibility barriers affecting images, forms, controls, navigation, contrast, and broader site functionality.

CLASS ACTION ALLEGATIONS

45.     Plaintiff CHRISTINE THOMAS brings this action on behalf of herself, and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2):

**All legally blind individuals in the United States who have attempted to access www.fabulacoffee.com and were denied equal access to its digital content, product information, and online purchasing functions due to persistent accessibility barriers during the relevant statutory period.**

46. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2):

**All legally blind individuals residing in the State of New York who have attempted to access www.fabulacoffee.com and were similarly denied equal access to its offerings due to the same systemic accessibility barriers.**

47. Common questions of law and fact exist among the Class, including:

(a) Whether www.fabulacoffee.com qualifies as a public accommodation or a service of a place of public accommodation under Title III of the ADA;

(b) Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Defendant's products, services, and support;

(c) Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace; and

(d) Whether final injunctive and declaratory relief is appropriate to require Defendant to remediate the Website and maintain accessibility on an ongoing basis.

48. Plaintiff's claims are typical of the Class. Like other blind individuals, she relies on screen-reading software and keyboard navigation to access online platforms. She encountered the same systemic barriers—unlabeled and undescribed images, inaccessible form controls, empty buttons, broken skip links, inaccessible option labels, and low-contrast content—that affect all Class members. Those barriers are further corroborated by the partial SortSite scan, which was halted at approximately 19% completion because of Defendant's anti-bot protections yet still identified accessibility issues.

49. Plaintiff will fairly and adequately represent the interests of the Class. She has retained counsel experienced in disability-rights and complex class-action litigation, has no interests antagonistic to those of the Class, and seeks declaratory and injunctive relief applicable to all members.

50. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making final injunctive and corresponding declaratory relief appropriate respecting the Class as a whole.

51. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

## FIRST CAUSE OF ACTION
### (Violations of the ADA, 42 U.S.C. § 12182 et seq.)

52. Plaintiff, CHRISTINE THOMAS, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

53. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12182(a), provides that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, leases to, or operates a place of public accommodation.

54. Defendant's Website is a service offered to the general public and must be equally accessible to all potential consumers.

55. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity.

56. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination includes, inter alia, a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently because of the absence of auxiliary aids and services, unless such steps would fundamentally alter the nature of the goods or services being offered or result in an undue burden.

57. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff is a member of a protected class under the ADA, has a physical disability that substantially limits the major life activity of sight, and has been denied full and equal access to Defendant's Website and the goods and services offered therein.

58. Defendant has failed to take prompt and equitable steps to remedy the discriminatory conduct, and the violations are ongoing. Those ongoing violations are further corroborated by the partial SortSite scan, which had to be stopped at approximately 19% completion because anti-bot protections impeded a fuller audit, yet still documented accessibility issues on the Website.

59. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests the relief set forth below.

## SECOND CAUSE OF ACTION
### (Violation of the New York State Human Rights Law ("NYSHRL"))

60. Plaintiff, CHRISTINE THOMAS, on behalf of herself and the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

61. At all times relevant to this action, the New York State Human Rights Law, Article 15 of the New York Executive Law § 290 *et seq.*, covers the actions of the Defendant.

62. Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

63. Defendant, at all times relevant to this action, owns and operates a place of public accommodation, the subject Website, www.fabulacoffee.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

64. Plaintiff has visited the Website, www.fabulacoffee.com, on a number of occasions and has encountered barriers to her access that persist to this day. Those barriers are reflected both in the WAVE audit of the Hazelnut Coffee page and in the broader SortSite scan that was cut short at approximately 19% completion due to Defendant's anti-bot protections.

65. Under Article 15 N.Y. Executive Law § 296(2)(a), "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any

person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

66. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

67. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against Plaintiff and the Subclass by (i) owning and operating a Website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) not removing access barriers to its Website in order to make accessibility features of the site known to disabled individuals who are sight-impaired; and (iii) refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full and equal access to the facilities, goods, and services that Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device.

68. Defendant's discriminatory practice also includes a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage, or accommodation being offered or would result in an undue burden. Article 15 of N.Y. Executive Law § 296(2)(c).

69. Established guidelines exist for making websites accessible to disabled individuals. The World Wide Web Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

70. Defendant has intentionally and willfully discriminated against Plaintiff and the Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2), and the discrimination continues to date. The partial SortSite crawl, despite being halted by anti-bot protections at approximately 19% completion, still revealed accessibility defects confirming the persistent and systemic nature of the discrimination.

71. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and the Subclass, causing irreparable harm.

72. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act, in addition to reasonable attorneys' fees, costs, and disbursements of this action.

### THIRD CAUSE OF ACTION
### (Violation of New York State Civil Rights Law ("NYCRL"))

73. Plaintiff, CHRISTINE THOMAS, on behalf of herself and the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

74. Plaintiff will serve notice of this action upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41.

75. All persons within the jurisdiction of the State of New York are entitled to the full and equal accommodations, advantages, facilities, and privileges of any place of public

accommodation, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. N.Y. Civ. Rights Law § 40.

76. No person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities or privileges thereof. N.Y. Civ. Rights Law § 40.

77. No person because of disability, as defined in N.Y. Exec. Law § 292(21), shall be subjected to any discrimination in her civil rights by any other person or by any firm, corporation, or institution. N.Y. Civ. Rights Law § 40-c. Plaintiff is disabled under the NYCRL.

78. Defendant discriminates against Plaintiff and the Subclass under N.Y. Civ. Rights Law § 40 and § 40-c because Defendant's Website is a place of public accommodation or service thereof that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight-impaired.

79. Defendant intentionally and willfully failed to remove the barriers on its Website, thereby discriminating against Plaintiff and the Subclass and preventing access in violation of N.Y. Civ. Rights Law § 40-c. Those barriers were documented not only by the WAVE page audit but also by the broader SortSite scan that could not proceed beyond approximately 19% completion due to Defendant's anti-bot protections.

80. Defendant has failed to take any steps to halt and correct its discriminatory conduct and continues to discriminate against Plaintiff and the Subclass members.

81. Under N.Y. Civ. Rights Law § 41, a corporation that violates any of the provisions of §§ 40, 40-a, 40-b, or 42 shall be liable for a penalty of not less than $100 nor more than $500, to be recovered by the person aggrieved.

82. Plaintiff and the Subclass therefore demand compensatory damages of $500.00 for Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civ. Rights Law § 40 *et seq.*

### FOURTH CAUSE OF ACTION
### (Violations of the New York City Human Rights Law ("NYCHRL"))

83. Plaintiff, CHRISTINE THOMAS, on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

84. N.Y.C. Admin. Code § 8-107(4)(a) provides that it is an unlawful discriminatory practice for any person who is the owner, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation, because of any person's disability, directly or indirectly to refuse, withhold from, or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation.

85. Defendant is subject to the NYCHRL because it owns and operates the Website www.fabulacoffee.com, making it a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

86. Defendant violates N.Y.C. Admin. Code § 8-107(4)(a) by refusing to update or remove access barriers to its Website, causing the Website and the services integrated therein to be inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

87. Defendant is required to make reasonable accommodation to the needs of persons with disabilities. N.Y.C. Admin. Code § 8-107(15)(a).

88. Defendant's actions constitute willful and intentional discrimination against the Subclass based on disability because Defendant has: (a) constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; (b) constructed and maintained a Website whose inaccessibility is sufficiently intuitive and obvious; and (c) failed to take action to correct access barriers in the face of substantial harm and discrimination to blind class members. The persistence of accessibility defects even in a SortSite crawl halted at only approximately 19% completion due to anti-bot protections further supports that these barriers are systemic and ongoing.

89. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, and these violations are ongoing.

90. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed Class and Subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations, and opportunities of the Website under N.Y.C. Admin. Code § 8-107(4)(a). Unless this Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

91. Defendant's actions violate the NYCHRL, and Plaintiff therefore invokes the right to injunctive relief to remedy that discrimination.

92. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Admin. Code §§ 8-120 and 8-126(a) for each offense, and punitive damages pursuant to N.Y.C. Admin. Code § 8-502.

93. Plaintiff is also entitled to reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### (Declaratory Relief)

94. Plaintiff, CHRISTINE THOMAS, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

95. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers full and equal access to the products, services, and facilities of the Website, which Defendant owns, operates, and controls, and fails to comply with applicable laws prohibiting discrimination against the blind. Those barriers are corroborated by the WAVE product-page scan and by the SortSite scan that, although halted at approximately 19% completion due to Defendant's anti-bot protections, still documented accessibility issues.

96. A judicial declaration is necessary and appropriate at this time so that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

(a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

(b) A preliminary and permanent injunction requiring Defendant to take all steps necessary to make the Website fully compliant with the requirements set forth in the ADA and its implementing regulations, in substantial conformance with WCAG 2.1 Level AA, so that the Website is readily accessible to and usable by blind individuals;

(c) A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and fails to provide access for persons with disabilities as required by the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

(d) An order certifying the Class and Subclass under Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

(e) Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed Class and Subclass for violations of civil rights under the New York City Human Rights Law, the New York State Human Rights Law, and the New York State Civil Rights Law;

(f) Pre-judgment and post-judgment interest;

(g) An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

(h) Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
     July 24, 2026

                Respectfully submitted,
                JOSEPH & NORINSBERG LLC
                /s/ Robert Schonfeld
                ROBERT SCHONFELD, ESQ.
                Attorneys for Plaintiff
                825 Third Avenue, Suite 2100
                New York, New York 10022
                Tel. No. (212) 227-5700
                rschonfeld@employeejustice.com